UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA BETH HICKS, on behalf of
herself and similarly situated employees,

     Plaintiff,

                                   Case No. 2:17-cv-12674

v.

                                   Hon. George Caram Steeh

GREAT LAKES HOME HEALTH
SERVICES, INC. and GREAT
LAKES ACQUISITION CORP., *d/b/a*
GREAT LAKES CARING,

                                   Magistrate Judge R. Steven Whalen

     Defendants.

---

**Motion for Summary Judgment**

       Defendants Great Lakes Home Health Services, Inc. and Great Lakes Acquisition Corp., *d/b/a* Great Lakes Caring ("Great Lakes"), through their attorneys, move pursuant to Fed. R. Civ. P. 56 for summary judgment on the claims of Plaintiff Laura Hicks. Defendants state as follows:

       1.     The Fair Labor Standards Act ("FLSA"), at 29 U.S.C. § 207(a)(1), provides that specified employees shall receive "one and one-half times the regular rate" of pay for each hour in a workweek in excess of forty hours.

       2.     By contrast, an employee who does not work more than forty hours in a workweek is not entitled to overtime pay, and thus cannot establish an FLSA vio-

lation. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1044, 194 L. Ed. 2d 124 (2016) ("Having worked less than 40 hours, that employee would not be entitled to overtime pay and would not have proved an FLSA violation.")

3. Hicks's Complaint alleges that from "approximately October 2015 until the end of December 2015," she worked more than forty hours a week, was entitled to overtime pay, and did not receive overtime pay. Hicks, however, admitted at her deposition that she does not have any specific evidence in support of her assertions, and apart from generalized speculation, she cannot identify the number of hours she worked in any given week between October 2015 and December 2015.

4. In fact, Hicks was classified as a part-time employee during that timeframe, and Defendants' analysis of her hours—using very conservative assumptions—shows that she never worked more than forty hours in any workweek, and generally worked significantly less than that.

5. Because Hicks never worked more than forty hours in any given workweek during the relevant timeframe, and because Hicks has already testified that she does not have any evidence from which to establish her week-by-week hours, there is not (and cannot be) any material dispute of fact that Hicks was not entitled to overtime pay, and cannot state an FLSA violation.

6.    Pursuant to Local Rule 7.1(a), on January 19, 2018, undersigned counsel discussed with Plaintiff's counsel the relief sought herein. Plaintiff's counsel denied concurrence thereby necessitating the filing of this motion.

WHEREFORE, for these reasons, and those discussed in the accompanying brief, Defendants request that the Court grant summary judgment in their favor.

Respectfully submitted,

KIENBAUM OPPERWALL
  HARDY & PELTON, P.L.C.

By: *s/ Eric J. Pelton*
     Eric J. Pelton (P40635)
     Thomas J. Davis (P78626)
Attorneys for Defendants
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
epelton@kohp.com
tdavis@kohp.com

Dated: January 22, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA BETH HICKS, on behalf of
herself and similarly situated employees,

     Plaintiff,

                              Case No. 2:17-cv-12674

v.

                              Hon. George Caram Steeh

GREAT LAKES HOME HEALTH
SERVICES, INC. and GREAT
LAKES ACQUISITION CORP., *d/b/a*
GREAT LAKES CARING,

                              Magistrate Judge R. Steven Whalen

     Defendants.

---

**Brief in Support of Motion for Summary Judgment**

# Table of Contents

Concise Statement of the Issue Presented.................................................................. ii

Controlling or Most Appropriate Authorities ............................................................ iii

Introduction.................................................................................................................1

Background .................................................................................................................2

A.    Hicks's Employment by First Care Health Care .............................................2

B.    Hicks's Involvement in the *Hutchins* FLSA matter. ......................................5

C.    Hicks's Current Suit against Defendants.........................................................5

Standard of Review.....................................................................................................7

Argument.....................................................................................................................8

A.    Hicks cannot meet her burden of showing she worked over forty hours in a workweek. ..............................................................................9

B.    Actual time records combined with Hicks's testimony establishes she did not work over forty hours. ...........................................10

## Concise Statement of the Issue Presented

Hicks's FLSA complaint alleges that between October 2015 and December 2015, she worked more than forty hours per week but that Defendants did not pay her overtime. She has no evidence to support this claim, and Defendants' analysis of her records shows that, even with very conservative assumptions and based on Hicks's testimony in this case, she never worked more than forty hours a week. Should the Court grant summary judgment because, having never worked over forty hours a week, Hicks cannot establish an FLSA violation as a matter of law?

# Controlling or Most Appropriate Authorities

## Cases

*Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*,
  323 F.3d 386 (6th Cir. 2003)

*Anderson v. Liberty Lobby. Inc.*,
  477 U.S. 242 (1986)

*Hutchins v. Great Lakes Home Health Servs., Inc.*,
  No. 17-CV-10210, 2017 WL 3278209 (E.D. Mich. Aug. 2, 2017)

*Mullendore v. City of Belding*,
  872 F.3d 322 (6th Cir. 2017)

*Myers v. Copper Cellar Corp.*,
  192 F.3d 546 (6th Cir. 1999)

*Remark LLC v. Adell Broad.*,
  817 F. Supp. 2d 990 (E.D. Mich. 2011), *aff'd* 702 F.3d 280 (6th Cir. 2012)

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)

## Statutes

29 U.S.C. § 207(a)(1)

## Introduction

Laura Hicks—the part-time Illinois nurse proffered as a last-minute "opt-in" plaintiff in the untimely *Hutchins v. Great Lakes Home Health Services* case—now brings this nearly carbon-copy lawsuit in her own name, seeking to certify a collective action for alleged FLSA overtime violations.[1] Fortunately, the Court let Defendants test Hicks's dubious individual claim first, as Hicks has now confirmed that her *Hutchins* affidavit—claiming that she worked 50-60 hours per week based on grossly-exaggerated estimates of patient visit and documentation times—was riddled with inaccuracies, and that she had no real evidence of her work hours.

Hicks's actual records of patient visits confirm (1) that her patient visit times were usually around 30 or 45 minutes (not 1.5 hours each as she claimed); and (2) that she spent far, far less than 2 hours per patient on post-visit paperwork. Although it is not Defendants' burden, they have performed a very conservative calculation that relies on company records and Hicks's deposition testimony. Giving Hicks every benefit of the doubt, this analysis shows that she did not work over forty hours per week during any of the weeks at issue, and usually worked closer to twenty-five hours, consistent with her part-time status. As she cannot show she was entitled to overtime, summary judgment is appropriate.

---

[1] Indeed, Ms. Hicks continues to sue *Hutchins's* former Michigan-based employer Great Lakes Home Health Services, Inc. but has neglected to sue her own, Illinois employer First Care Healthcare, Inc. As Defendants warned in *Hutchins*, Ms. Hicks appears to be a placeholder plaintiff with no valid FLSA claims.

## Background

### A.    Hicks's Employment by First Care Health Care

Plaintiff Sandra Hicks was hired as a Registered Nurse by First Care Healthcare, Inc. ("First Care") in Springfield, Illinois on January 14, 2015. Ex. A, Pl's Dep. 22-24 & Dep. Ex. 1. Her duties included providing patient care in a patient's home, documenting visits, performing aide plans, and supervising other home health workers. *Id.* at 20; Ex. B, Fleck Decl. ¶ 4. First Care paid Hicks primarily on a "per visit" basis, with Hicks being compensated $50 per OASIS visit, and $30 per non-OASIS visit,[2] along with bonus pay for on-call, in-service office hours, meetings, and phone and mileage reimbursement. Ex. A, Pl's Dep. 20; Ex. C, Corporate Dep. at 28-29. The "visit" fee compensated Hicks for all aspects of the visit, including the in-home portion (if any; some "visits" required only paperwork, *see, e.g.*, Ex. A, Pl's Dep. 71, 143-44), documentation, and tasks like calling patients to schedule visits. Ex. D, VandenMaagdenberg Decl. ¶ 9.

On October 27, 2015, Great Lakes Acquisition Corp. acquired First Care, which remained a separate entity but took the trade name of "Great Lakes Caring." Ex. C, Corporate Dep at 14. After the acquisition, an integration team started the process of transitioning the First Care office to Great Lakes Caring's payroll system and electronic medical record program. *Id.* at 50-51, 128. As part of the transi-

---

[2] OASIS was a visit type to Medicare and Medicaid patients that required additional paperwork. Ex. D, VandenMaagdenberg Decl. ¶¶ 6-7.

tion, Hicks became a full-time salaried employee, which became effective on December 27, 2015. Ex. A, Pl's Dep. 34-35; Ex. D, VandenMaagdenberg Decl. ¶ 4.

During the transition period between October 27, 2015 and December 26, 2015, Hicks continued to be paid on the per-visit basis. *Id.* She also continued to document patient visits in First Care's electronic medical record system known as Kinnser. Ex. A, Pl's Dep. 37-38. The Kinnser system tracked the time that an employee was in the patient's home providing care, with the employee using the system to capture the time the visit started, and when it ended. *Id.* at 38, 71-76. During the visit, Hicks would begin the patient's "note," or documentation of the visit, much of which involved recording the patient's answers to questions, vital signs, and the like. *Id.* at 76-77. Sometimes the note could be completed during the visit, and sometimes it would have to be completed afterwards. *Id.* at 77-79. Hicks would complete paperwork and engage in other non-visit activities when she chose to do work from home. *Id.* at 155-56. The completed note would be submitted to Hicks's supervisor for review, who could accept the note as-is, or send it back to correct minor mistakes (which took only a few minutes). *Id.* at 84-87.

Thus, under the Kinnser system, Hicks's time spent working in a patient's home was specifically tracked. Ex. B, Fleck Decl. ¶ 9. Each patient visit has an accompanying note that records the time-in and time-out of the visit. *Id.* ¶ 16. As for documentation, the Kinnser patient record shows the time that a patient's note was

opened by Hicks, and when it was submitted to her supervisor. *Id.* ¶ 17. Kinnser did not, however, track *how much* time was spent doing the patient note outside of a patient's home, although the time could sometimes be inferred (such as when a note was completed during the visit, or within a few minutes after the visit ended.) *Id.* ¶ 9; Ex. D, VandenMaagdenberg Decl. ¶ 24. Hicks also used Kinnser to record how many miles it took to her drive to the patient's home. Ex B, Fleck Decl. ¶ 9.

In January 2016, First Care had transitioned to a new electronic medical record system called Homecare Homebase (HCHB). Ex. B, Fleck Decl. ¶ 20. Hicks's types of visits did not change, nor did her work duties or the type of documentation required; the only difference was that she used HCHB instead of Kinnser. Ex. A, Pl's Dep. 67, 152-53. Unlike Kinnser, all work-related activity was logged into HCHB—including time spent working on a patient matter outside of the patient's home. *Id.* at 63, 156. Hicks stated that it took her longer to document a visit in HCHB than in Kinnser. *Id.* at 153-54. Hicks also testified that she always entered her time and mileage in Kinnser and in HCHB accurately, and never falsified any records. Ex. A, Pl's Dep. at 75, 155. Thus, under HCHB, Hicks performed the same visits and documentation (which took her longer than under Kinnser), and all of her activities were tracked, including work spent outside the home on patient matters. Ex. B, Fleck Decl. ¶ 20.

Hicks quit First Care on February 11, 2017. Ex. A, Pl's Dep. 22.

**B.    Hicks's Involvement in the *Hutchins* FLSA matter.**

Sometime in April 2017, Hicks's friend sent her a Facebook solicitation for potential opt-in Plaintiffs in the *Hutchins* case previously before this Court. Ex. A, Pl's Dep. 43 & Dep. Ex. 2 at HICKS 0045. On May 12, 2017, she filed an opt-in consent in that action that implied she was eligible for, but not paid, overtime from October 2015 through February 2017. Ex. E, Hutchins Opt-In. Great Lakes moved to strike Hicks's opt-in consent, citing among other things Hicks's lack of entitlement to FLSA overtime pay, and because the last-minute opt-in appeared to be designed to prevent dismissal of Hutchins's untimely claim. *See* Def's Mot. to Strike Premature Consent, *Hutchins*, 2:17-cv-10210-GCS-DRG (Dkt. 21). In response, Hicks filed a declaration (discussed in more detail below) claiming that she worked between 50 to 60 hours a week during the October 2015 to December 2015 timeframe. *See* Ex. A, Pl's Dep. 175-76; Ex. F. Ultimately, the Hutchins case was dismissed, and the issue of Hicks's opt-in consent became moot. *See Hutchins v. Great Lakes Home Health Servs., Inc.*, No. 17-CV-10210, 2017 WL 3278209, at *3-4 (E.D. Mich. Aug. 2, 2017).

**C.    Hicks's Current Suit against Defendants.**

Less than two weeks after this Court dismissed *Hutchins*, Hicks filed this suit. Her Complaint largely mirrored the *Hutchins* complaint; indeed, she did not

even name her own employer First Care as a Defendant, but continued to name Ms. Hutchins's former employer Great Lakes Home Health Services. *See* Dkt. 1.

Hicks's complaint focuses entirely on the short transition timeframe after First Care was acquired by Great Lakes Acquisition Corp. on October 27, 2015 but before she started receiving a salary. Dkt. 1, Compl. ¶¶ 10, 14-16. As in her earlier affidavit, she claims that she worked "between fifty (50) and sixty (60) hours per week" during that time, but that she was not paid overtime. *Id.* And as before, this Complaint seeks to certify a collective action. The Court, however, agreed to allow Defendants to test Hicks's individual claims first. *See* Dkt. 18, 19.

Hicks was deposed by Defendants' counsel in October 2017, where she was questioned about her continued claim that she worked 50 to 60 hours a week during the October 2015 to December 2015 timeframe. *See* Ex. A, Pl's Dep. 175-76. In that deposition, Hicks admitted that she did not draft the *Hutchins* declaration that she signed, that she spent only an hour on the phone with counsel's office while they drafted it, and made no changes to the draft presented to her. *Id.* at 175-76, 202-03. She also admitted that this declaration was filled with numerous errors that contradicted her sworn testimony, including the amount of pay she received for visits. *Id.* at 176-193. Of specific relevance here:

- Hicks's declaration claimed that *every* visit she was paid for required "at a minimum, one hour in each patient's home, and usually longer." She settled on a 1.5 hour-per-visit figure in "calculating" her hours. Ex. F ¶¶ 9, 13. In her deposition, she admitted that some of her "visits" involved *no* time in a

patient's home, and that visits could be completed in a half hour. Ex. A, Pl's Dep. at 71, 150, 184, 189.

- The declaration stated that completing the documentation of a patient visit "in a patient's home is impossible and usually requires a minimum of 2 hours of time per visit completing the visit paperwork from home." She would use 2 hours per visit in "calculating" her hours. Ex. F ¶ 9, 13. At her deposition, she admitted that paperwork *could* be completed in a patient's home (meaning there was no additional documentation time), and further backtracked on her "two hours per visit" in response to her own counsel's questioning. Ex. A, Pl's Dep. at 182, 199-200.

Hicks further admitted that she had no documentation showing how much time she spent on patient matters outside of the patient's home, having destroyed those records, and although she claimed general recollections of how much time she spent, she could not specifically say how much time she spent on any patient. Ex. A, Pl's Dep. at 151-164. She did testify, however, that her HCHB records of post-visit documentation time and non-visit activity time could help her in figuring out how much time she spent doing the same in Kinnser. *Id.* at 163-65, 171.

### Standard of Review

The standard of review for a Rule 56(c) motion for summary judgment asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 251–52, (1986)). The evidence and all reasonable inferences must be construed in the light

most favorable to the non-moving party, but "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

Thus, to "survive summary judgment, [the opposing party] must put forth sufficient evidence to demonstrate that there is a genuine issue of material fact," and a "mere scintilla of evidence is insufficient" to do so. *Mullendore v. City of Belding*, 872 F.3d 322, 327 (6th Cir. 2017) (internal citations omitted). "Mere allegations or denials in the non-movant's pleadings will not meet this burden." *Remark LLC v. Adell Broad.*, 817 F. Supp. 2d 990, 1001 (E.D. Mich. 2011), *aff'd* 702 F.3d 280 (6th Cir. 2012).

## Argument

Hicks claims that for a two-month transition period between October 27, 2015—when her employer was purchased by Great Lakes Caring—and her conversion to salary basis of pay on December 27, 2015, she did not receive overtime for hours she claims to have worked in excess of forty in a workweek, in violation of the FLSA. Although there are a number of defenses to this claim, including that Hicks was exempt from the overtime provisions of the FLSA, this motion is based on the undisputed fact that Hicks did not work over forty hours in a workweek during the transition period.

**A.     Hicks cannot meet her burden of showing she worked over forty hours in a workweek.**

Hicks's Collective Action Complaint is based on her claim that she worked more than forty hours in a workweek without receiving overtime pay as required by the FLSA. 29 U.S.C. § 207(a)(1). But Hicks cannot prove she worked more than forty hours in a workweek and, thus, no overtime pay is owing and the FLSA has not been violated. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1044 (2016).

Under the FLSA, a "plaintiff must prove by a preponderance of evidence that he or she 'performed work for which he [or she] was not properly compensated.'" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972)). Hicks has failed to meet this burden.

Hicks's Affidavit filed in the *Hutchins* case asserts that she worked between 50 and 60 hours per week during the transition period. But, when questioned about her Affidavit in deposition in this case, Hicks conceded that her lawyer-drafted Affidavit, which she only cursorily reviewed, was inaccurate in several material respects. *See supra* pp. 6-7. Indeed, she admits that she has no way of substantiating her hours worked other than a general feeling. Ex. A, Pl's Dep. at 151-52, 161-63, 188. And, while she claims she maintained a calendar with the number of hours

-9-

that she worked, she destroyed that portion of the calendar. *Id.* at 151. Hicks's abstract feeling that she worked over forty hours in a workweek is insufficient as a matter of law. *See Tyson Foods, Inc.*, 136 S.Ct. at 1048-49 ("evidence that is … based on implausible assumptions could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked."); *Ihegword v. Harris Cty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) ("an unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference.")

**B.    Actual time records combined with Hicks's testimony establishes she did not work over forty hours.**

Defendant has actual time records in the form of patient records for all 202 visits Hicks made during the transition period. Hicks concedes these are accurate to show actual visit time. Ex. A, Pl's Dep. 72-74, 93. These records also accurately show documentation time when it was completed during the visit. *Id.* at 121, 140-44. Defendant also has records of the time Hicks spent attending meetings and of the number of miles driven by her. And Hicks testified that she accurately recorded such time and miles. *Id.* at 149, 155, 206.

The electronic medical record program utilized by First Care at that time did not capture work time spent documenting patient records or other non-visit activities such as phone calls and scheduling. Nonetheless, Defendants are able to con-

clusively show the maximum amount of time spent on these documentation and non-visit activities, when combined with the actual visit times, is not over forty hours in any workweek during the transition period.

In January 2016, Hicks began using the Homecare Homebase software instead of the Kinnser system that had been used previously. Hicks agrees that the amount of time spent performing documentation and non-visit activities is accurately tracked in the Homecare Homebase system. Ex. A, Pl's Dep. 165, 169-171. Hicks also testified that the Homecare Homebase system was more complex and took longer to complete documentation than it did under the old Kinnser system. The system was new to her in the first quarter of 2016, the setup of the software, the flipping between screens and the fact there was not an autofill and cut-and-paste feature that she was aware of required her to spend more time documenting in HCHB than under the old Kinnser system. Ex. A, Pl's Dep. 153-54. Hicks also testified that her duties and the mix of visits that she made in the first quarter of 2016 was the same as it was during the transition period. *Id.* And she herself suggested that she would want her HCHB data to help determine how much time she spent documenting and on non-visit activity, as all of it was tracked. *Id.* at 164-65; 171. Finally, she testified that she honestly, and to the best of her ability, accurately entered all of her work time into the Homecare Homebase system. *Id.* at 155.

In order to determine whether Hicks worked more than forty hours during the transition period, the company has analyzed Hicks's actual visit records from the Kinnser system and added to that time the average documentation time shown in the Homecare Homebase system through March 2016 for the same types of visits. This visit and documentation activity has been added to the non-visit activity that Homecare Homebase tracks to determine the maximum hours Hicks could have worked in each of the workweeks during the transition period. Defendants have also added the time Hicks spent traveling and waiting (even where it could have assessed her non-paid break time) based on the time of visits and her own statement of mileage found in the Kinnser system. Ex. D, VandenMaagdenberg Decl. ¶¶ 16-32 & Decl. Ex. 5.

The methodology of calculating the maximum time Hicks worked purposefully overestimates Hicks's time in several respects:

- The analysis credits Hicks with working the entire time between patient visits of an hour or less, but assumes that it was all drive time, and that she did not use any of this time to work on post-visit paperwork, unless the records rule out that possibility. Ex. D, VandenMaagdenberg Decl. ¶ 24, 26-27. The analysis thus double-counts nearly all of Hicks's time spent working on paperwork between visits. It also would not encompass any non-compensable break time of 20 minutes or more between these visits. 29 C.F.R. § 785.18.

- The calculation uses Hicks's post-visit documentation time as she recorded in *HCHB*—a system she testified was more complicated and time-consuming system than the Kinnser system she was actually using. Ex A, Pl's Dep. 153-54. This necessarily overestimates Hicks's post-visit documentation time.

-12-

- Hicks's supervisor Nicolle Fleck, herself a registered nurse, set forth in her affidavit the time it should have taken Hicks to complete certain forms of paperwork-only "visits" (OASIS-C1 Non-Billable Discharge, OASIS-C1 Transfers, Aide Care Plans, Discharge Summaries, and Supervisory Visits). *See* Fleck Decl. ¶ 11-15. The calculation inflates those times by 50% or more, to Hicks's benefit.

- Although any time Hicks drove from her home to a patient's home was non-compensable commute time, *see* 29 U.S.C. § 254(a); 29 C.F.R. § 785.35, the analysis assumes Hicks always traveled to the office before going to the patient, except when the records specifically ruled out the possibility.

- Where compensable "drive time" was calculated (such as for the first visit of the day), the analysis assumes that Hicks drove at the slow speed of 30 miles per hour, and multiplied that by her actual reported mileage. In reality, she likely spent much of her driving time on highways, freeways, or expressways at a speed of forty-five to seventy miles per hour (or more.) Ex. B, Fleck Decl. ¶ 21; Ex. D, VandenMaagdenberg Decl. ¶ 27; *cf.* Ex. A, Pl's Dep. at 205.

- Hicks's office hour time was broken out by pay period, and not by week (with two exceptions). To avoid the possibility of undercounting office hours in any given week, the calculation *double-counts* those hours instead, assigning the full allotment of semi-monthly office hours to each week. Ex. D, VandenMaagdenberg Decl. ¶ 29. For example, Hicks had 3 office hours *total* for the paycheck covering December 1, 2015 through December 15, 2015—but the analysis credits her with 6 office hours for that timeframe (3 hours in the first week, and 3 hours in the second week). *See id.*

- The analysis credits Hicks with the 20 minutes of other non-visit activity on every day she had a paid visit, even if she did not even travel to a patient's home that day. *Id.* ¶ 30.

- The analysis does not attempt to reconcile the fact that Hicks was mistakenly overpaid for certain activities (including being paid in two separate pay periods for the same visits on December 14, 2015 and December 15, 2015). *See id.* ¶ 15, p.6.

-13-

The cumulative effect of these overestimates is considerable. But even using these significant overestimates of work time, Hicks was *still* under forty hours of work in each and every week during the transition period:

| Week Beginning | Maximum Hours Worked |
|---|---|
| October 18, 2015 | 28.63 |
| October 25, 2015 | 39.40 |
| November 1, 2015 | 39.40 |
| November 8, 2015 | 19.40 |
| November 15, 2015 | 22.79 |
| November 21, 2015 | 22.83 |
| November 29, 2015 | 29.18 |
| December 6, 2015 | 24.48 |
| December 13, 2015 | 31.73 |
| December 20, 2015 | 29.07 |

On this record, then, Hicks admittedly cannot offer any specific evidence of the time she worked. And using (1) her *own* actual visit times; (2) her *own* actual post-visit documentation time from Homecare Homebase; (3) exceedingly generous estimates and double-counting of paperwork time, drive/wait time, and administrative time; and (4) relying on Hicks's own admissions concerning the truthfulness of her documentation, Hicks could not have worked over forty hours per

week. Just as with the flawed plaintiff in *Hutchins*, Hicks does not have a valid FLSA claim, and she should not be permitted to bring an FLSA "collective action" complaint. The Court should grant summary judgment.

Respectfully submitted,

KIENBAUM OPPERWALL HARDY
  & PELTON, P.L.C.

By: s/Eric J. Pelton
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
280 N. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
(248) 645-0000
epelton@kohp.com
tdavis@kohp.com

Dated: January 22, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

s/*Eric J. Pelton*
Eric J. Pelton (P40635)
Kienbaum Opperwall Hardy
  & Pelton, P.L.C.
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009
(248) 645-0000
epelton@kohp.com
