UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA BETH HICKS,
on behalf of herself and
similarly situated employees,

      Plaintiff,

                                  CASE NO. 17-CV-12674
      v.                           HON. GEORGE CARAM STEEH

GREAT LAKES HOME HEALTH
SERVICES, INC. and GREAT
LAKES ACQUISITION CORP., d/b/a
GREAT LAKES CARING,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR CONDITIONAL CERTIFICATION (Doc. 38)
AND DENYING PLAINTIFF'S MOTION FOR EQUITABLE
TOLLING (Doc. 40) WITHOUT PREJUDICE AS PREMATURE**

This putative collective action brought under the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. § 201 et seq., seeks overtime compensation for

work Plaintiff Laura Beth Hicks, a registered nurse, performed as a home

health worker.  Now before the court is (1) Plaintiff's motion for conditional

certification; and (2) Plaintiff's motion to equitably toll the statute of

limitations for putative collective members until sixty days after the court

resolves Plaintiff's conditional certification motion.   The court has carefully

considered the written submissions, including Defendants' sur-reply brief.

For the reasons set forth below, the court shall conditionally certify a class of registered nurses and licensed practical nurses who worked in excess of forty hours a week and were paid on a hybrid basis composed of a flat fee-per visit basis and hourly basis at the Springfield, Illinois location only, but shall deny Plaintiff's request to certify a nationwide class of employees as there is no evidence that employees outside Springfield were similarly situated to Plaintiff, and shall deny Plaintiff's motion to equitably toll the statute of limitations for putative collective members as premature.

## I. Background

Hicks, a registered nurse, began working for First Care Healthcare, Inc. ("First Care"), a non-party, in Springfield, Illinois in January, 2015. Her duties included patient home visits, as well as documenting visits, performing aide plans, and supervising other home health workers. Defendants claim that Hicks was a part-time employee until December 27, 2015. At that time, the parties agree Hicks became a full-time salaried employee and thus, was exempt from overtime compensation pursuant to the FLSA. The two-month time period from October 27, 2015 to December 27, 2015 is referred to as the "transition period," and it is for this time period only that Hicks alleges she was a covered employee under the FLSA and

was denied overtime compensation. During the transition period, Hicks was paid a flat per-visit fee depending on the type of care provided, and hourly compensation for certain tasks.

On October 27, 2015, Defendant Great Lakes Acquisition Corp., a Michigan based corporation, acquired First Care. Defendant Great Lakes Acquisition Corp. does business under the name "Great Lakes Caring." Defendants previously filed a motion for summary judgment on the basis that Plaintiff only worked part-time during the relevant time period and thus, was not denied overtime compensation in violation of the FLSA. In the briefs filed in connection with that motion, Defendants never argued for summary judgment on the basis that they were not Plaintiff's employer. Now, however, Defendants argue that Plaintiff was never their employee. The proofs are conflicting; however, there is at least an issue of fact as to whether Plaintiff was an employee of Defendant Great Lakes Acquisition Corp.

Defendant Great Lakes Acquisition Corp. admits that after it acquired First Care, First Care began using the trade name "Great Lakes Caring." (Doc. 26-4 at PgID 156). Also, significantly, Marcy J. Miller, who identifies herself as Chief Clinical Officer of Great Lakes Caring and Vice President of Great Lakes Home Health Services, Inc., submitted a declaration that

Plaintiff "became a Great Lakes Caring employee on October 27, 2015."
(Doc. 39-5 at ¶ 3).  Also, in their recent summary judgment motion,
Defendants relied on the affidavit of Great Lakes Acquisition Corp. Chief
Financial Officer, Carry VandenMaagdenberg, who provided detailed
testimony regarding Plaintiff's employment.  (Doc. 26-4 at PgID 156-170).
Also, Hicks was provided with a "Reference Guide" for Great Lakes Caring
employees.  (Doc. 39-11 at PgID 1147-1286).  That reference guide
provides that all new employees of Great Lakes Caring "complete the HR
portion of on-boarding at Corporate Headquarters in Jackson, Michigan or
at the offices in Kokomo, Indiana, Mentor, Ohio or Chicago, Illinois." *Id.* at
PgID 1150.  The reference guide also refers employees to centralized
Great Lakes Caring training and policy documents.  *Id.* at PgID 1284.

On the other hand, Defendants rely on the deposition testimony of
Miller that Plaintiff was not employed by Defendant Great Lakes Home
Health Services, Inc., (Doc. 43-4 at PgID1561) and VandenMaagdenberg's
declaration that Plaintiff was solely an employee of First Care and not of
Defendants.  (Doc. 43-5 at PgID 1568-69).  Given these conflicting proofs,
there is a question of fact as to whether Plaintiff was employed by
Defendants.

This lawsuit is related to a prior lawsuit filed by the same Plaintiff's counsel against these same Defendants for alleged overtime violations under the FLSA. *Hutchins v. Great Lakes Home Health Serv., Inc.*, No. 17-CV-10210, 2017 WL 3278209 (E.D. Mich. Aug. 2, 2017). This court dismissed that suit as time-barred because the named plaintiff's claims there arose more than two-years prior to the filing of the suit, and plaintiff failed to allege facts sufficient to support a finding of "willfulness" which would have elongated the statute of limitations to three-years. In that suit, plaintiff sought to add an opt-in form by putative class member Hicks, but the court did not consider the opt-in form as it had dismissed the named plaintiff, and thus, there was no basis for continuing the lawsuit. Plaintiff's counsel filed this suit less than two weeks after the dismissal of the *Hutchins* case, and it largely mirrors that case.

According to her motion for conditional certification, Plaintiff seeks to certify the following class:

> All home health employees of Great Lakes at any time since October 30, 2015 who were paid on a hybrid fee and hourly basis.

(Doc. 39 at PgID 956). In a footnote of her Reply, Plaintiff revised the proposed class as follows:

> All individuals who, during any time since October 30, 2015, provided home health services under the Great Lakes Caring brand and were paid both on a fee basis and hourly basis.

(Doc. 44 at PgId 1687). In their Sur-Reply, Defendants object to Plaintiff modifying the proposed class in its Reply brief. Defendants' objection is well taken. Thus, the court shall rely on the first definition proposed by Plaintiff, but even if the court were to consider the second proposal, it is overly broad and the court will not certify a collective class under that definition.

The court now summarizes the six proofs that Plaintiff relies upon in support of conditional certification. First, Plaintiff relies upon her own affidavit that she worked more than 40-hours per week during the transition period at the Springfield, Illinois office and was paid on a hybrid fee per-visit and hourly salary during that time. In her affidavit, Plaintiff states:

> There were other nurses and home health workers who worked out of the Springfield, Illinois office during my employment with Great Lakes Caring who were paid on a fee per visit and hourly basis like I was. I know this because, as an RN Case Manager, I obtained first hand knowledge of how LPNs were paid. Further it is my understanding that many nurses and home health workers continue to be paid in this manner.

(Doc. 39-2 at PgId 967). Hicks states that she is personally aware that LPNs at the Springfield location were paid in this same hybrid manner based on her managerial role as a registered nurse. (Doc. 39-2 at PgID

967).  She also states in the passive tense, "it is my understanding that many nurses and home health workers continue to be paid in this manner." *Id.*  No basis is given for her "understanding," for example, conversations with co-workers, etc.  Also, Plaintiff ceased working for First Care in February, 2017, so it is not clear what the basis of her opinion would be after that time.

Second, Plaintiff relies on Hutchins' lawsuit which was dismissed as time-barred.  Hutchins' lawsuit does not identify any members of the putative class.  Hutchins, who worked in Michigan, allegedly worked more than 40-hours per week only prior to October, 2014.  Thus, her claims are outside the relevant time period and cannot form the basis for a collective action.

Third, Plaintiff has submitted redacted pay records which list only her own name and individual data.  She argues that because the "TOTALS" field at the bottom of the page exceeds the amounts recorded for herself, this supports a conclusion that other employees were paid on a hybrid basis, worked over 40-hours in those weeks, and were denied overtime compensation.

Fourth, Plaintiff relies on Defendants' compensation policies that provide for fee-per-visit compensation methods.  (Doc. 39-8 at PgID 1119).

The written policy does not provide for hybrid fee per-visit and hourly

compensation method.

Fifth, Plaintiff relies on VandenMaagdenberg's Declaration that:

Nurses were also given "visit" pay for two activities that only
involved paperwork: (a) writing a Discharge Summary; and (b)
creating Aide Care Plans.

(Doc. 26-4 ¶ 8).

Finally, Plaintiff relies on the testimony of Miller that Defendants'

compensation and employment policies are centralized and standardized,

and that it categorized all registered nurses as exempt and paid them

bonuses for training, and attending team conferences.  (Doc. 39-12 at PgID

1289-91, Doc. 39-3 at PgID 976-78, 980, 1002).

## II. Standard of Law

Plaintiffs seek conditional class certification and conditional notice of

a collective action under § 216(b) of the FLSA.   The purpose of conditional

certification is to vitiate "Congress's remedial intent by consolidating many

small, related claims of employees for which proceeding individually would

be too costly to be practical."  *Monroe v. FTS USA, LLC*, 860 F.3d 389, 405

(6th Cir. 2017) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

170 (1989).  Two requirements exist under § 216(b) for a representative

action to proceed: (1) the employees must be *similarly situated*, and (2) "all

plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (citing 29 U.S.C. § 216(b) and *Sperling*, 493 U.S. at 167-68). Collective actions brought under the FLSA are distinct from class actions brought under Federal Rule of Civil Procedure 23 as putative plaintiffs must opt into the class. *Id.*

The certification process occurs in two steps. At the first stage, the court determines whether the suit should be conditionally certified as a collective action such that potential class members are given notice of the suit's existence and their right to participate. *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 217 (E.D. Mich. 2010). The second stage takes place at the conclusion of discovery after all of the opt-in forms have been received. *Id.* (citing *Comer*, 454 F.3d at 546). The matter now before the court involves Plaintiffs' motion for conditional certification at the first stage.

In order to grant conditional certification at the first step, the plaintiffs must show that the employees in the putative collective are similarly situated to the lead plaintiffs. *Comer*, 454 F.3d at 546. To do so, plaintiff need only make a "modest factual showing" that her position is "similar" to the putative members of the collective. *Id.* at 546-47. This is a "fairly lenient standard" that "*typically* results in conditional certification of a

representative class." *Id.* at 547 (internal quotation marks omitted, emphasis added). Although a plaintiff's burden is more lenient than that which exists in the Rule 23 context, proof that plaintiff's position is similar to the putative members of the class is not a "mere formality." *Hawkis v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012). In reviewing a plaintiff's factual showing, courts consider whether other potential plaintiffs were identified and whether affidavits of potential plaintiffs were submitted. *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004). Courts also consider "whether evidence of a widespread discriminatory plan was submitted." *Id.* At the notice stage "[t]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Wlotkowski*, 267 F.R.D. at 217 (internal quotation marks and citations omitted).

### III. Analysis

**A.    Plaintiff's Springfield, Illinois Workplace**

For reasons to be discussed in more detail below, Plaintiff has failed to establish that Defendants had any common nationwide policy of paying home health workers on an improper hybrid fee per-visit and hourly basis. Plaintiff's proofs are strictly limited to her own situation at her own workplace and are limited to RNs and LPNs there. Defendants argue that

the fact that there is only one named plaintiff and no opt-in plaintiffs is fatal to Plaintiff's motion for collective certification in total. While these are factors the court has considered, the court nevertheless finds that Plaintiff's affidavit is sufficient to establish that she may be similarly situated to other RNs and LPNs who worked at the Springfield, Illinois location where she worked, who may have been deprived of overtime compensation based on allegations that they were paid on a hybrid fee per-visit and hourly basis and worked more than 40 hours in a week. According to her affidavit, Plaintiff herself worked on a hybrid fee per-visit and hourly basis and worked in excess of 40-hours per week, and based upon her supervisory position, she knows LPNs were classified and paid in the same manner.

Although Plaintiff seeks to certify all "home health employees," Plaintiff's affidavit does not state any personal knowledge that non-RNs or non-LPNs were treated in the same manner, and thus, there is no basis for extending certification beyond RNs and LPNs. *See White v. MPW Indus. Serv., Inc.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006) ("affidavits submitted at the notice stage must be based on the personal knowledge of the affiant."); *Holmes v. Kelly Serv. USA, LLC*, No. 16-cv-13164, 2017 WL 3381415 at *7 (E.D. Mich. Aug. 7, 2017) (denying broad certification class proposed by plaintiff because plaintiff provided no first hand knowledge based on

observations or conversations with co-workers or likewise to infer how she came to know that other employees were denied overtime).  It is not enough to rely on the bare allegations set forth in the Complaint, plaintiff must make a factual showing, albeit a modest one.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("The 'modest factual' showing cannot be satisfied simply by 'unsupported assertions.'")

Defendant argues that other district courts in the Eastern District of Michigan have denied certification where plaintiff fails to submit affidavits or opt-in notices from other plaintiffs.  But those cases are distinguishable.  In two of the cases cited, Defendants submitted employee declarations disputing the allegedly wrongful policy.  For example, in *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL 1659381, at *2-3 (E.D. Mich. May 3, 2011), the court denied certification where plaintiff claimed she was denied a paid lunch break but did not identify any other potential class members by name, and the employer submitted numerous declarations from employees that it paid them for any missed meal breaks upon notification.  Likewise, in *Anderson v. P.F. Chang's China Bistro, Inc.*, No. 16-14182, 2017 WL 3616475, at *7-11 (E.D. Mich. Aug. 23, 2017), plaintiff, a sous chef, argued that his employer wrongfully classified him as an exempt professional claiming that he performed no managerial duties, yet the defendant-

employer submitted thirteen declarations from sous chefs at its locations around the country, each described their primary duties in a manner that meant they qualified as exempt from the overtime requirements of the FLSA. By contrast, in this case, Defendants have not submitted any employee affidavits to contradict Hicks' claim that she and other RNs and LPNs at the Springfield location were denied overtime compensation for hours worked and that they were paid on a hybrid fee per-visit and hourly basis.

Defendant also relies on *Demorris v. Rite Way Fence, Inc.*, No. 14-cv-13777, 2015 WL 12990483, at *3-4 (E.D. Mich. March 30, 2015), where the court found the plaintiff's failure to identify or provide affidavits of potential plaintiffs was fatal to his request for certification. But in that case, the plaintiff, who worked for a fence installer, not only failed to identify or provide affidavits of potential plaintiffs, he also failed to identify the job titles or responsibilities of putative class members or even his own job title, job site, or responsibilities. *Id.* at *4. Here, by contrast, Hicks worked as an RN and claims to have personal knowledge that other RNs and LPNs worked under a common plan that violated the FLSA's overtime requirements. Although Hicks has not identified other potential plaintiffs by name or affidavit, her own affidavit is sufficient to support certification of a

class of putative plaintiffs who worked in the Springfield, Illinois location as RNs or LPNs who were paid on a hybrid fee per-visit and hourly rate and worked in excess of 40-hours per week but were denied overtime compensation. Her factual showing is admittedly modest, but that is all that is required under the FLSA.

## B.    Nationwide Class

The court turns now to the question of whether Hicks has made a sufficient factual showing that Defendants had a nationwide common plan of depriving home health care workers of overtime compensation that would justify certification of a class of employees from eight states,[1] and finds that she has not. Hicks relies on six factors which she argues support conditional certification, but all are deficient.

## 1.    Lack of Personal Knowledge

First, Hicks relies on her own affidavit. As discussed above, however, her affidavit is limited to knowledge of RNs and LPNs at the Springfield location only. Thus, her affidavit fails to support her motion for

_____

[1]Plaintiff alleges that Defendants operate six home health companies and two to three hospice companies in Michigan, Ohio, Indiana, Illinois, Kansas, Missouri, Massachusetts, and Maine.

nationwide class certification.  In addition, her knowledge is limited to RNs
and LPNs and would not apply to "home health employees" in general.

## 2.    Other Putative Class Members

Hicks has not identified any putative class members by name nor are
there any opt-in plaintiffs.  Moreover, Hicks has not come forward with any
declarations of present and former employees at other locations that would
justify sending notice to all locations urged by her.  She relies only on the
verified complaint filed in the *Hutchins* case which she claims is evidence
Defendants had a common plan in Michigan.  But the *Hutchins* case was
dismissed because Hutchins did not work overtime beyond October, 2014,
and thus her claims were time-barred.  Likewise, Hutchins' claims would be
time-barred here and fail to support Hicks' motion for conditional class
certification.

## 3.    Payroll Records

Hicks also relies on redacted pay records from her work at the
Springfield, Illinois location which she claims shows that other employees
were paid on a hybrid fee per-visit and hourly basis.  Although Hicks
worked at the Springfield location, she has not identified any co-workers by
name who were paid similarly to her.  In any event, the pay records, which

reflect only a few pay periods, are not evidence of a common plan beyond Hicks' own workplace.

**4.    Defendants' Compensation Policies**

Hicks also argues that Defendants have comprehensive policies that violate the FLSA as set forth in written documents, including an employee handbook.  (Doc. 39-8, 39-11).  But these documents do not set forth a hybrid pay plan; rather, they set forth a fee per-visit policy for certain home health workers.  The FLSA regulations permit a professional exemption for "fee basis" employment.  *Elwell v. Univ. Hosp. Home Care Servs.*, 276 F.3d 832, 837-38 (6th Cir. 2002) (citing 29 C.F.R. 541.313(b) and 541.315(a)).  Overtime compensation is only owing when an employee is paid on a hybrid fee per-visit and hourly basis, and thus the strictly fee-based exemption does not apply.  *Id.* at 839.  Here, Hicks has failed to show the existence of a hybrid policy nor has she demonstrated that any employees worked more than 40-hours per week.  Thus, Hicks has failed to show that Defendants had a nationwide comprehensive policy of paying home health workers on a hybrid basis and of refusing to compensate them for overtime.

**5.    VandenMaagdenberg's Declaration**

Hicks also argues that the declaration of Defendants' Chief Operating

Officer, Carry VandenMaagdenberg, supports her claim that Defendants

had a common plan that violates the FLSA.  Specifically, she states:

> Nurses were also given "visit" pay for two activities that only
> involved paperwork: (a) writing a Discharge Summary; and (b)
> creating Aide Care Plans.

(Doc. 26-4 at ¶ 8.)  But there is nothing in the FLSA that prohibits fee per-

visit compensation.  The FLSA only prohibits employers from misclassifying

employees as exempt when they are paid on an hourly and fee per-visit

basis and work over forty hours per week.  Hicks has failed to come

forward with any evidence of a hybrid pay system outside her workplace or

to show that employees worked overtime for which they were denied

compensation.

**6.    Deposition Testimony**

Finally, Hicks relies on the deposition testimony of Defendants' Chief

Clinical Officer and Vice President of Great Lakes Home Health Services

Inc., Marcy Miller, who testified that Defendants' compensation and

employment policies are centralized.  Hicks also inaccurately attributes to

Miller representations that Defendants treated all RNs as exempt yet paid

them hourly bonuses.  In fact, Miller testified that part-time RNs are not

exempt, but full-time RNs are salaried and exempt.  In any event, nothing about Miller's testimony supports her motion for conditional certification. Hicks has not shown that Defendants had any overarching corporate policy of paying its home health employees on a hybrid fee-per visit and hourly basis.

In sum, Hicks has failed to make even the modest factual showing required for conditional certification beyond her own workplace as she has not demonstrated that any similarly situated putative plaintiffs exist outside the Springfield location.  Hicks' attempts to show that Defendants had a common plan or policy of mischaracterizing its employees as exempt from the FLSA when they were really owed overtime compensation fails because she has not shown any evidence of the existence of a centralized hybrid pay system**.**  What she has demonstrated is simply that Defendants paid some home health employees on a per-visit basis.  Such a method of compensation is not a *per se* violation of the FLSA.

The court also rejects outright Hicks' claim in her Reply that this court already found the existence of a corporate-wide hybrid pay plan in its decision denying Defendants' motion for summary judgment.  The court's order is quite clear that it considered only the manner in which Hicks herself was paid and there is no suggestion in the court's opinion that *any*

other employees were paid in the same way, let alone that a company-wide policy existed.  (Doc. 36 at PgID 919).

### C.    Plaintiff's Motion for Equitable Tolling

Hicks also moves to equitably toll the statute of limitations of putative collective members until 60-days after the court decides her motion for conditional certification.  The parties already stipulated to a tolling of the statute of limitations period from October 30, 2017 until the court decided any summary judgment motion.  The court decided the summary judgment motion on May 24, 2018.  Under the terms of the tolling stipulation, putative collective members' statute of limitations started running again when the court issued its May 24, 2018 decision.  Hicks filed her motion for conditional certification on June 5, 2018.  Defendants oppose the motion for additional tolling on the grounds that it is premature because there are no opt-in plaintiffs before the court.  Indeed, the Sixth Circuit has stated that the propriety of equitable tolling must necessarily be determined on a case-by-case basis, including an evaluation of the knowledge, diligence, and reasonableness of the person seeking tolling.  *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).  Also, courts are to apply equitable tolling sparingly.  *Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990).

Hicks argues that equitable tolling is common in FLSA cases where there has been a significant delay.  While Hicks has cited a number of cases in support of this assertion, the circumstances of this case do not involve a significant delay.  By stipulation of the parties, the matter has already been tolled for seven-months, from the time of the initial conference until the time the court denied summary judgment on Hicks' claim.  The cases cited by Hicks in support of equitable tolling involved extreme delay. *See, e.g., Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 844-48 (S.D. Ohio 2013) (granting tolling where over a year had passed since plaintiff moved for court-supervised notice); *Biggs v. Quicken Loans, Inc.*, No. 2:10-cv-11928, 2014 WL 12661985, at *5 (E.D. Mich. Feb. 19, 2014) (granting tolling where court imposed stay lasting over one-year); *Engel v. Burlington Coat Factory Direct Corp.*, No. 1:11-cv-759, 2013 WL 5177184, at *4 (S.D. Ohio Sept. 12, 2013) (granting tolling where eight-month delay after plaintiff filed motion for conditional certification).  This case is distinguishable from those cases because here, the court has already tolled the statute of limitations period by seven months, and the court issues its ruling on Hicks' motion for conditional certification in this order within three-months of her filing.  While the authority Hicks relies upon appears insufficient to justify

additional tolling of the statute of limitations period, the court reaches no decision on the matter at this time.

"Most District Judges in this circuit have concluded that it is improper to equitably toll the claims of potential opt-in plaintiffs who are not yet before the court." *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1046 (S.D. Ohio 2018) (collecting cases). As there are no opt-in plaintiffs now before the court, the matter of equitable tolling is premature and Hicks' motion for equitable tolling on a class-wide basis shall be denied.

In this regard, Hicks argues that should the court deem the issue of equitable tolling to be premature, as the court now has, the court should authorize notice to all putative collective members paid under the hybrid pay plan during any time since October 30, 2015 in order to preserve the rights of putative opt-ins to assert equitable tolling. To the extent the court grants conditional certification, the court shall use the date urged by Hicks.

### D.    Notice

Hicks has attached a copy of her proposed Notice to her motion for conditional certification. Defendants object to the Notice on a myriad of grounds. In her Reply, Hicks asks for leave to attempt to negotiate the Notice form prior to a court ruling on the issue. The court agrees with this suggested procedure.

## IV. Conclusion

For the reasons discussed above, Plaintiff's motion for conditional certification (Doc. 39) is GRANTED in part in that the following class is conditionally certified:

> All RNs and LPNs who work or worked at the same Springfield, Illinois location where Hicks worked, who at any time since October 30, 2015 were paid on a hybrid per-visit fee and hourly basis, and who worked more than 40-hours per week and were denied overtime compensation.

and is DENIED in part as to the broader collective definition sought by Plaintiff.

IT IS FURTHER ORDERED that Plaintiff's motion for an extension of tolling of the running of putative collective members' statute of limitations (Doc. 40) hereby is DENIED WITHOUT PREJUDICE AS PREMATURE.

IT IS FURTHER ORDERED that the parties attempt to agree on the Notice form and if they are able to do so, to file the Notice form with the court on or before October 22, 2018. The scheduling conference originally set for September 13, 2018 shall be rescheduled to take place on October 22, 2018 at 10:00 a.m. If the parties are unable to agree on the Notice form, Plaintiff shall file the proposed Notice form on or before October 5, 2018 and Defendants shall file any objections within 14-days. Plaintiff may reply within 7-days of the filing of any objections.

The court reaches no conclusion as to whether Plaintiff was employed by Defendants.

**IT IS SO ORDERED.**

Dated:  September 13, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 13, 2018, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk